## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TRACY MCFADDEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  11-1658 (JEB)** |
| | ) | |
| **SIMON T. WAINWRIGHT,** *et al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## <u>MEMORANDUM OPINION</u>

Petitioner in this action for a writ of habeas corpus "is no novice to the [District of Columbia] parole scheme," *McFadden v. Wainwright*, No. 10-1198, 2010 WL 4871193, at *1 (D.D.C. Dec. 1, 2010) (citation omitted), and no stranger to this Court.  He is currently confined at the Rivers Correctional Institution in Winton, North Carolina, but he filed this action while incarcerated at the District of Columbia Jail on yet another parole-violator warrant.  Indeed, Petitioner has been released on parole from the same sentence and then revoked *at least six times*.  *See McFadden v. United States Parole Comm'n*, No. 10-597, ECF No. 14 (Sept. 27, 2010, Mem. Op.) at 1-2.  The legitimacy of Petitioner's latest parole-revocation proceedings in 2011 forms the basis of the instant Petition for a writ of habeas corpus under 28 U.S.C. § 2241.  As the Court finds no basis for issuing the writ, it will deny the Petition and dismiss the case.

### I.    Background

Petitioner's custody arises from his aggregate prison sentence of 7-21 years imposed by the Superior Court of the District of Columbia on October 6, 1989.  Pet. at 2; *see* Opp. at 1 & Exh. 1 (listing sentencing date for F-10288-86 and F-15311-88 as July 26, 1989); *McFadden v.*

*Wainwright*, 2010 WL 4871193, at *1 ("Petitioner is serving an aggregate sentence of 21 years'

imprisonment based on consecutive sentences imposed by the Superior Court of the District of

Columbia in July and October 1989.").  He had previously been released on parole from this

sentence in 1995, 2001, 2003, 2006, and 2009.  *McFadden v. United States Parole Comm'n*,

Mem. Op. at 1-2.

On March 22, 2011, the United States Parole Commission released Petitioner to parole

supervision once again, where he was to remain until March 1, 2020.  Opp., Exh. 3 (Parole

Certificate).  In a violation report dated less than two weeks later on April 4, U.S. Probation

Officer Stacey A. Carter, citing her unsuccessful attempts to reach Petitioner, requested that the

Commission issue a warrant for his arrest for his failures to report for supervision and to notify

the Commission of his "current whereabouts."  *Id.*, Exh. 4 (April 4, 2011, Letter from Stacey

Carter).  The Commission issued the warrant ten days later, and the United States Marshals

Service arrested Petitioner on July 8, 2011.  *Id.*, Exh. 6 (USPC Warrant, Marshal's Return).

On July 12, 2011, the Commission held a probable cause hearing where Petitioner,

represented by the District of Columbia Public Defender Service, denied the sole charge of

Failure to Report for Supervision.  *Id.*, Exh. 7 (D.C. Probable Cause Hearing Digest).  Hearing

Examiner Paul Howard nonetheless found probable cause to hold Petitioner for a revocation

hearing, *id.* at 3, which he conducted on August 11 at the District's Correctional Treatment

Facility.  *Id.*, Exh. 8 (Hearing Summary).  Petitioner was represented again by a PDS attorney,

who requested a continuance to (1) obtain records under the Freedom of Information Act

regarding Petitioner's mental health, (2) accommodate two witnesses who could testify about

Petitioner's learning disability, and (3) allow time for Petitioner's pending habeas petition in

federal court to be addressed.  *Id.* at 1-2.  Examiner Howard denied counsel's request because it

was untimely and because he did not "believe [that] the requested information [would] have any bearing on the nature of the charges." *Id*. at 2.

In addition to his continuance request, counsel challenged the Commission's "authority to conduct [the revocation] hearing because a parole certificate was not issued or executed by the subject[;] [t]herefore[,] the subject had no instructions as to what his obligations were . . . ." *Id*. Finally, counsel also challenged Howard's ability to be neutral given "the conversations between [Howard] and [Petitioner] at the Probable Cause Hearing on 7/12/2011." *Id*. Examiner Howard rejected counsel's argument questioning the Commission's authority because "the evidence [] showed that [Petitioner] had more than enough indication that he [] was on parole," and he rejected counsel's argument questioning his neutrality because the charge was "a minor administrative violation that require[d] testimony from an adverse witness." *Id*. Howard stated, moreover, that Petitioner's counsel had made no "objections on how the Probable Cause Hearing was conducted" in the digest "executed by counsel," and he concluded that "this examiner is capable of being neutral and detached in conducting this hearing." *Id*.

After Petitioner "became visibly upset and left [the hearing] room" despite a warning that the hearing would continue without him, the hearing proceeded with Petitioner's counsel and the testimony of USPO Carter. *Id*. Following Carter's testimony, *see id*. at 3-4, Howard found from the testimony and documentary evidence that Petitioner had indeed violated the conditions of his release by failing to report for supervision and recommended that Petitioner's parole be revoked with a reparole guideline range of 12-16 months. *Id*. at 4.

On September 19, 2011, the executive reviewer, S. Husk, considered the argument of Petitioner's counsel for vacating the revocation hearing based on Howard's alleged bias, his refusal to grant the continuance, and the unexecuted parole certificate, but did not find these

arguments persuasive.  *Id*. at 5-6.  Husk concluded that because Petitioner "has demonstrated an

inability/unwillingness to comply with conditions of parole based on his repeated failures under

supervision," he supported Howard's "recommendations including the decision to reparole at the

top of the guideline range."  *Id*. at 6.  The Commission adopted Howard's recommendation and

issued a memorializing Notice of Action on September 21, 2011.  *Id.*, Exh. 9 (Notice of Action).

Meanwhile, Petitioner filed suit in this Court on September 14, 2011.

## II.     Analysis

District of Columbia prisoners are entitled to habeas corpus relief if they establish that

their "custody [is] in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2241(c)(3).   The handwritten Petition scanned into the electronic docket is barely

legible in places, and the original paper copy is no longer available.  Therefore, the Court has

read  Petitioner's stated grounds for relief in conjunction with the United States' summary of

those grounds and discerns the following claims: (1) the revocation proceeding was invalid

because Petitioner never signed a parole certificate upon his release from the D.C. Jail setting

forth the terms of his release and was thus unaware of the reporting requirement; (2) Hearing

Examiner Howard erred in denying Petitioner's motion to continue the revocation hearing to

gather "proper documents" and secure his witnesses; and (3) the Commission erred in allowing

Howard to conduct the revocation hearing since "[Howard] got into some heated arguments

[with Petitioner] and exchanged words" at the probable cause hearing.  Pet. at 5-6; Opp. at 1.[1]

---

[1] Petitioner also asserts that he was arrested on July 2, 2011, and "sat" until July 8, 2011, "before my warrant was executed[.]  My warrant application says my violation date (3-22-11) is my release date[.]  How can this be when I was released at 7:51 p.m. how is this possible[?]."  Pet. at 5 (Ground Two).  The Court can perceive no cognizable claim from Petitioner's rumination.

Although Petitioner does not specifically say so in his Petition, the Court can safely assume that he is claiming that the foregoing alleged misconduct deprived him of due process. A parolee has a Fifth Amendment liberty interest in maintaining his conditional freedom and therefore is entitled to due process prior to revocation. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). That entitlement, however, is limited to notice and an opportunity to be heard in a meaningful and reasonably timely manner, *see id.* at 1421-24 (discussing *Morrissey's* standards), and to a decision that is neither "totally lacking in evidentiary support [n]or [] so irrational as to be fundamentally unfair." *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002) (citations omitted). Bearing this standard in mind, the Court will address each of Petitioner's arguments in turn.

Petitioner first asserts that he was not aware of his reporting requirements since he never signed a parole certificate upon his release from the D.C. Jail. Examiner Howard determined that "based on the evidence . . ., [Petitioner] had more than enough indication that he . . . was on parole" and was thus subject to the reporting requirement. Hrg. Summ. at 2. In so finding, Howard reasonably relied on the testimony of USPO Carter, who recounted that, in February 2011, she prepared a release plan for Petitioner, visited a home in Maryland where Petitioner was to reside, and spoke with an individual there who reportedly had spoken with Petitioner "about his release plans and proposed residence." *Id.* at 3; *see Crawford v. Jackson*, 323 F.3d 123, 128 (D.C. Cir. 2003) ("Reliance on hearsay in parole revocation proceedings is not per se impermissible," and indeed is acceptable as long as "the evidence considered as a whole . . . [is] [] sufficient in [both] quantity and reliability to ensure fundamental due process rights.") (citations omitted). Thereafter, Carter approved the release plan. Hrg. Summ. at 3. Upon learning that Petitioner's release was delayed because he had violated the rules of a halfway

house and been returned to custody, Carter stated that she told the person at the Maryland

residence  to "instruct [Petitioner] to report for supervision" after his release from the D.C. Jail

on March 22, 2011.  *Id.*  When Petitioner did not report and was not reachable by telephone,

Carter, on March 29, 2011, left a voicemail message for Petitioner and sent a letter to the

Maryland residence instructing Petitioner to report on April 4, 2011.  *Id.*  Carter conducted

another home visit on March 30, 2011, and left a business card with instructions for Petitioner to

contact her office.  After Petitioner failed to return Carter's voicemail message of April 1 or to

report on April 4, Carter requested the violator warrant.  *Id.*  Carter "acknowledged that a parole

certificate was not executed because [Petitioner] never reported" for supervision.  *Id.*

After hearing arguments from both sides on the alleged implications of the unexecuted

parole certificate, Howard made the following determination:

> [Petitioner] has been on supervision six times and is familiar with his parole
> obligations.  In addition to the NOA that was generate[d] after his last
> revocation and a copy provided to [Petitioner], there is the release plan
> investigation that [Petitioner] signed . . ., progress reports generated by the
> [Bureau of Prisons] that includes the supervising district and [Petitioner's] .
> . . signature.  Most damaging is the probable cause digest that was
> generated at the 7/12/2011 probable cause hearing and signed by counsel,
> and a copy provided to all parties.  On the last page of the digest . . . is the
> notation "H.E. – subject acknowledged he was aware he was on parole."
> Counsel not only signed the document but did not object to the statement
> nor did [Petitioner] after being given a copy.  This final indicator including
> the other evidence is sufficient to conclude [Petitioner] was aware of his
> parole obligations.

*Id.* at 4.  In addition, Howard noted that "[a]ll [of Petitioner's] five revocations included failure

to report for supervision."  *Id.* The Court cannot find that such a determination is fundamentally

unfair or lacking in evidentiary support.  *See Duckett,* 282 F.3d at 847 (finding no due process

violation where "the BOP appears to have considered both the seriousness of Duckett's violation

[failure to report] and the mitigating factors he advanced," such as his unawareness of the reporting requirement).

Petitioner next argues that the Hearing Examiner erred in failing to grant a continuance so that Petitioner could obtain documents and witnesses to present evidence regarding his mental health.  There is no dispute that Petitioner's continuance request was made on the day of the hearing.  Hrg. Summ. at 1.  Under 28 CFR § 2.101(d)(2), "[a] request for a postponement [of a revocation hearing] that is received by the Commission less than fifteen days before the scheduled date of the revocation hearing will be granted only for a compelling reason."  The Hearing Examiner's denial is not fundamentally unfair because Petitioner's request is not compelling.  Examiner Howard determined that this evidence would not have changed the outcome, Hrg. Summ. at 2, and that determination is hardly irrational.  There is no allegation of incompetence here or any severe cognitive impairment; indeed, Petitioner's pleadings are comprehensible, and he himself says, "I don't or do not have any law experience, but I can read and comprehend."  Reply (styled "Response") at ECF page no. 2.  As a result, even considering some mental health or learning impairments, he would have had a hard time arguing he did not know of his reporting requirements given Carter's efforts and Petitioner's five previous parole experiences, all of which resulted in revocation at least in part for failure to report.

Finally, Petitioner claims that Examiner Howard should have recused himself from the revocation because of heated words that he exchanged with Petitioner at the probable cause hearing.  Howard denied this request on the ground that Petitioner's counsel never expressed any objections to Howard's conduct of the initial hearing and because Howard believed he could be "neutral and detached."  Hrg. Summ. at 2.  Once again, there seems to be neither fundamental unfairness nor irrationality in such a decision.  There are certainly occasions when sharp words

are exchanged in courtrooms between judges and counsel or litigants, and a single such dispute –

without any mention of the substance or even what Howard is alleged to have said – hardly

warrants recusal.

     The probable cause and revocation hearings at which Petitioner was ably represented by a

PDS attorney – coupled with the hearing examiner's rational explanations for denying the

requested continuance and the recusal, and for recommending the parole revocation – comported

with the Fifth Amendment's due process requirements.

**III.**    **Conclusion**

     As the Court finds no basis for issuing the requested writ of habeas corpus, Petitioner's

application will be denied and the case dismissed.  A separate final order accompanies this

Memorandum Opinion.


                /s/ *James E. Boasberg*
                JAMES E. BOASBERG
                United States District Judge

Date:  June 14, 2012